Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| JEANNETTE SANTIAGO LUCERNA<br>Apelante<br><br>v.<br><br>MAPFRE-PRAICO INSURANCE COMPANY y OTROS<br>Apelado | TA2025AP00038 | *Certiorari* procedente del Tribunal de Primera Instancia Sala de Bayamón<br><br>Civil Núm. BY2022CV06103<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

## **SENTENCIA**

En San Juan, Puerto Rico, a 14 de enero de 2026.

Comparece la señora Jeannette Santiago Lucerna (señora Santiago Lucerna o apelante), a través de un recurso de *apelación,* en el que solicita la revocación de la *Sentencia Sumaria Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI), el 24 de abril de 2025. Mediante la referida *Sentencia* el foro primario acogió una moción de sentencia sumaria instada por la aseguradora codemandada Mapfre-Praico Insurance Company (Mapfre o apelada), por lo que desestimó la causa de acción presentada contra esta última.

No obstante, la señora Santiago Lucerna sostiene ante nosotros que incidió el TPI al desestimar la causa de acción contra Mapfre, pues su asegurado, el Municipio de Cataño (el Municipio), había asumido ciertas responsabilidades sobre el mantenimiento de la calle donde sucedió el incidente que dio lugar a la presentación de la *Demanda* por daños y perjuicios.

No tiene razón, confirmamos.

## I. Resumen del tracto procesal pertinente

El 26 de octubre de 2023 la señora Santiago Lucerna instó una *Demanda* por daños y perjuicios contra Mapfre como aseguradora del Municipio de Cataño. Alegó que, el 18 de febrero de 2023, mientras transitaba en su bicicleta junto a un grupo de ciclistas, sufrió una caída en la Avenida Las Nereidas, PR-888, (la Avenida), en Cataño, Puerto Rico, cuando su goma delantera cayó en un hueco y salió expulsada, provocándole daños físicos, que precisó. En consonancia, le imputó negligencia al Municipio, consistente en no mantener sus carreteras en condiciones aptas para que los ciudadanos las utilicen, ni proveer rotulación advirtiendo del peligro.

Cabe indicar que, previo a la presentación de la *Demanda*, el 30 de mayo de 2023, el Municipio le había provisto a la señora Santiago Lucerna una certificación que indicaba que la Avenida estaba bajo jurisdicción.

En cualquier caso, instada la *Demanda*, Mapfre presentó *Contestación a Demanda,* negando y admitiendo algunas de las alegaciones imputadas, (entre las cuales admitió que para la fecha de los hechos tenía expedida una póliza en favor del Municipio), además de levantar defensas afirmativas.

Ya iniciado el descubrimiento de prueba, Mapfre instó ante el TPI una *Moción* para que este ordenara al Departamento de Transportación y Obras Públicas, (DTOP), a que emitiera una certificación sobre la Avenida.[1]

En efecto, el foro primario accedió a la solicitud de Mapfre, expidiendo la *Orden* solicitada.

Como consecuencia, el DTOP emitió una certificación, cuyo contenido revelaba que la Avenida era de su jurisdicción. Es decir, la Avenida era de jurisdicción del Estado Libre Asociado de Puerto Rico (ELA).

---

[1] Entrada Núm. 13 de SUMAC.

En reconocimiento de tal certificación emitida por el DTOP, la señora Santiago Lucerna presentó una *Moción en solicitud de autorización para presentar Demanda enmendada*, y *Demanda Enmendada,* con el propósito de incluir como codemandado al DTOP, por conducto del ELA. A lo cual el foro primario accedió.

Es así como, el 29 de abril de 2024, Mapfre presentó la *Moción de Sentencia Sumaria Parcial* a la que aludimos en la introducción. En síntesis, adujo que no existía controversia sobre que el hecho de que la carretera donde ocurrió el accidente era una vía estatal que le pertenecía al ELA y estaba bajo su control, no al Municipio. Sobre lo mismo, explicó que, aunque inicialmente el Municipio había expedido una certificación indicando que la Avenida estaba bajo su jurisdicción, esto fue un error que resultó rectificado a través de la certificación expedida por el DTOP. Por tanto, que establecido que la carretera donde ocurrió el accidente alegado era estatal y no municipal, el Municipio, ni su aseguradora, debían responder por los daños alegados, poseyendo inmunidad por virtud de la Ley Núm. 107-2020.

Con el propósito de establecer los hechos que juzgó como materiales e incontrovertidos, Mapfre enumeró seis hechos, junto a la prueba documental que los establecía. En específico, incluyó copia de la certificación emitida por el DTOP a los fines de establecer que la Avenida era de la jurisdicción estatal, no del Municipio.

Sin embargo, la señora Santiago Lucerna solicitó al Tribunal, y este concedió, término amplio para tener la oportunidad de hacer un descubrimiento de prueba sobre la prueba documental incluida por Mapfre en la moción dispositiva pendiente.

De manera paralela, como consecuencia de la *Enmienda a Demanda* que el TPI le autorizó a la señora Santiago Lucerno para incorporar al ELA como codemandado, este último presentó una *Moción de Desestimación* aduciendo que la apelante había incumplido con el requisito de

notificación dispuesto en la *Ley de Reclamaciones y Demandas contra el Estado,* Ley Núm. 104-1955, según enmendada. La apelante instó *Oposición a desestimación.*

Con todo, el 20 de agosto de 2024, Mapfre presentó una *Segunda Moción en Oposición a Posponer Adjudicación y Reiterando la Solicitud de Sentencia Sumaria Parcial,* en la cual recalcó que no existía controversia sobre la titularidad de la carretera PR-888 donde ocurrieron los hechos, por lo que procedía sin más dilación la desestimación de la causa de acción en su contra.

En respuesta, el TPI le concedió a la apelante sesenta (60) días finales para informar si iba a desistir de la causa de acción contra el Municipio.

Por ello, el 6 de noviembre de 2024, la señora Santiago Lucerna presentó una *Oposición a Solicitud de Sentencia Sumaria Parcial,* en la cual argumentó que la titularidad de la carretera PR-888 estaba en controversia, debido a las certificaciones encontradas del Municipio y el DTOP. Arguyó, además, que el Municipio no estaba cobijado por la inmunidad otorgada por el Código Municipal de Puerto Rico en estos casos, debido a que le era imputable negligencia en el mantenimiento de la Avenida.

El mismo día, la señora Santiago Lucerna solicitó autorización del TPI para enmendar por segunda vez la *Demanda,* esta vez con el propósito de incluir como codemandada a la Autoridad de Carreteras y Transportación (ACT), a lo cual accedió el foro primario. Por lo cual, el 20 de diciembre de 2024, la ACT compareció y contestó la *Segunda Demanda Enmendada.*

El 24 de enero de 2025, se celebró una vista ante el TPI donde se discutieron varios asuntos procesales, entre ellos, la *Moción de Sentencia Sumaria Parcial* de Mapfre y su oposición. **En esta vista, la representación legal del DTOP-ELA admitió nuevamente que la**

**carretera PR-888 le pertenecía**. Por su parte, el abogado de la apelante expresó que, en cuanto a la Autoridad de Carretera le hiciese llegar la certificación, desistiría.[2] De conformidad, el Tribunal le concedió diez (10) días perentorios a la apelante para determinar si se allanaba a la petición de sentencia sumaria del apelado.

Por otra parte, el 27 de enero de 2025, el TPI notificó una *Resolución Interlocutoria*, declarando *No Ha Lugar* la solicitud de desestimación por falta de notificación del ELA. El ELA solicitó *Reconsideración* de dicha determinación.

El 12 de febrero de 2025, Mapfre presentó una *Moción Reiterando Solicitud de Sentencia Sumaria Parcial*.

Ante ello, el 16 de febrero de 2025, la señora Santiago se allanó a la solicitud del apelado, por lo que, el 18 de febrero del mismo año, el Tribunal declaró *Ha Lugar* la *Moción Reiterando Solicitud de Sentencia Sumaria*, aunque concediéndole un término de cinco días a Mapfre para que presentara proyecto de sentencia sumaria parcial.

No obstante, el 17 de marzo de 2025, la apelante presentó una *Moción de Reconsideración y/o Desglose de la Moción Presentada en la Entrada (73) y Reiteración de Oposición a Solicitud de Sentencia Sumaria Parcial*.[3] En lo medular, la señora Santiago Lucerna esgrimió que el Municipio sí tenía responsabilidad por los daños alegados, según surgía de las obligaciones que asumió a través de un "Acuerdo Colaborativo de Transferencia de Fondos para el Mantenimiento de Áreas Verdes en las Carreteras y Mejora a la Infraestructura Vial"[4] que suscribió con el DTOP, y cuya copia incluyó como anejo. Aseveró que dicho acuerdo tenía como propósito "la transferencia de fondos para trabajos de mantenimiento de las carreteras estatales primarias, secundarias y terciarias", y asegurar a los residentes del Municipio, *seguridad vial y orden*. Concluyó que el

---

[2] Ver *Minuta*, entrada Núm. 68 de SUMAC.
[3] Entrada Núm. 78 de SUMAC.
[4] Id.

mantenimiento y monitoreo de huecos y hoyos en la Avenida era inherente a la responsabilidad integral asumida por el Municipio a través del referido acuerdo.

En desacuerdo, Mapfre presentó escrito en *Oposición*. Luego de reiterar los argumentos ya contenidos en su *Solicitud de Sentencia Sumaria*, Mapfre aclaró que el referido Acuerdo en nada infringía la inmunidad que cobija al Municipio, ni le imponía obligación respecto a la Avenida que se relacionara a la causa de acción presentada por la señora Santiago Lucerna. En específico, afirmó que las obligaciones contraídas en el Acuerdo referían a labores sobre limpieza y/o mantenimiento de áreas verdes, no formando parte de este la reparación estructural o construcción de las vías de rodaje de la Avenida Las Nereidas. Por lo tanto, se sostuvo en la inexistencia de una causa de acción en su contra.

Finalmente, el 24 de abril de 2025, el TPI emitió la Sentencia Parcial cuya revocación nos solicita la señora Santiago Lucerna, acogiendo la *Moción de Sentencia Sumaria Parcial* presentada por Mapfre, desestimando por ello la causa de acción en contra de esta última.

Insatisfecha, la señora Santiago acude ante nosotros mediante recurso de *apelación*, señalando la comisión del siguiente error:

> **PRIMER ERROR:** Erró el TPI al desestimar la causa de acción de la parte apelante contra MAPFRE-PRAICO Insurance Company, como aseguradora del Municipio de Cataño, al concluir que el accidente alegado ocurrió en una carretera estatal, sin reconocer la existencia del Acuerdo Colaborativo entre dicho Municipio y el DTOP, ni la Póliza de Responsabilidad suscrita por MAPFRE-PRAICO Insurance Company a favor del Municipio de Cataño.

Como resultado, Mapfre presentó *Alegato en Oposición*. Contando con los escritos de las partes, estamos en posición de disponer.

## II. Exposición de Derecho

a.

El propósito de las Reglas de Procedimiento Civil es proveer a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". 32 LPRA Ap. V, R.1; *González Santiago v. Baxter*

*Healthcare*, 202 DPR 281, 290 (2019); *Roldan Flores v. M. Cuebas et al., 199* DPR 664, 676 (2018); *Rodríguez Méndez et al. v. Laser Eye,* 195 DPR 769, 785 (2016), *Oriental Bank v. Perapi et al.*, 192 DPR 7, 25 (2014). La sentencia sumaria hace viable este objetivo al ser un mecanismo procesal que le permite al tribunal dictar sentencia sobre la totalidad de una reclamación, o cualquier controversia comprendida en ésta, sin la necesidad de celebrar una vista evidenciaria. J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2012, pág. 218. Procede dictar sentencia sumaria si "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia si las hubiere, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y pertinente y, además, si el derecho aplicable así lo justifica". *González Santiago v. Baxter Healthcare,* supra*; Roldan Flores v. M. Cuebas et al.,* supra; *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015), *SLG Zapata-Rivera v. J. F. Montalvo*, 189 DPR 414, 430 (2013). A su vez se recomienda, en aquellos casos en que el tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Así, la sentencia sumaria "vela adecuadamente por el balance entre el derecho de todo litigante a tener su día en corte y la disposición justa rápida y económica de los litigios civiles". *Const. José Carro v. Mun. de Dorado*, 186 DPR 113, 130 (2012); *Mejías et al. v. Carrasquillo et al.,* supra*,* en la pág. 300; *Ramos Pérez v. Univisión*, 178 DPR 200, 220 (2010). Por lo tanto, el principio rector que debe guiar al juez de instancia en la determinación sobre si procede o no la sentencia sumaria es "el sabio discernimiento", ya que si se utiliza de manera inadecuada puede prestarse para privar a un litigante de su día en corte, lo que sería una violación a su debido proceso de ley. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327-328 (2013). Ello, pues la mera existencia de "una

controversia de hecho es suficiente para derrotar una moción de sentencia sumaria... cuando causa en el tribunal una duda real y sustancial sobre algún hecho relevante y pertinente". *Pepsi-Cola v. Mun. Cidra et al.,* 186 DPR 713, 756 (2012). Se considera un hecho esencial y pertinente, aquél que puede afectar el resultado de la reclamación acorde al derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, supra, pág. 213.

Por otra parte, la duda para impedir que se dicte sentencia sumaria no puede ser cualquiera, sino que debe ser de tal grado que "permita concluir que hay una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión*, supra, págs. 213-214.

Dicho lo anterior, es esencial reconocer que la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R.36, establece de manera específica los requisitos de forma con los que debe cumplir la parte que promueve la moción de sentencia sumaria, así como la parte que se opone a ella. En lo pertinente, la parte promovente debe exponer un listado de hechos no controvertidos, desglosándolos en párrafos debidamente numerados y, para cada uno de ellos, especificar la página o el párrafo de la declaración jurada u otra prueba admisible que lo apoya. A su vez, **la parte que se opone a la moción de sentencia sumaria está obligada a citar específicamente los párrafos según enumerados por el promovente que entiende están en controversia y, para cada uno de los que pretende controvertir, detallar la evidencia admisible que sostiene su impugnación con cita a la página o sección pertinente**. (Énfasis provisto). *Meléndez González et al. v. M. Cuebas*, 193 DPR 100,137 (2015). La parte que se opone no puede descansar exclusivamente en sus alegaciones ni tomar una actitud pasiva. *Toro Avilés v. P.R. Telephone Co.*, 177 DPR 369, 383 (2009). Por el contrario, tiene que controvertir la prueba presentada por la parte solicitante, a fin de demostrar que sí existe controversia real sustancial sobre los hechos materiales del caso en cuestión. *González Aristud v. Hosp. Pavía*, 168 DPR 127 (2006).

Nuestro más alto foro ha manifestado que "**a menos que las alegaciones contenidas en la moción de sentencia sumaria queden debidamente controvertidas**, éstas podrían ser admitidas y, de proceder en derecho su reclamo, podría dictarse sentencia sumaria a favor de quien promueve". (Énfasis provisto). *Meléndez González et al. v. M. Cuebas*, supra*,* pág. 137. Sin embargo, "toda inferencia razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a la misma". *ELA v. Cole,* 164 DPR 608, 626 (2005).

### A. Función revisora del foro apelativo con respecto a la sentencia sumaria dictada por el foro primario

En el caso de revisar sentencias del Tribunal de Primera Instancia dictadas mediante el mecanismo de sentencias sumarias o resolución que deniega su aplicación, nuestro Tribunal de Apelaciones se encuentra en la misma posición que el tribunal inferior para evaluar su procedencia. *Meléndez González et al. v. M. Cuebas*, supra. Los criterios a seguir por este foro intermedio al atender la revisión de una sentencia sumaria dictada por el foro primario han sido enumerados con exactitud por nuestro Tribunal Supremo. *Id.* A tenor, el Tribunal de Apelaciones debe:

1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras: (1) solo podemos considerar

los documentos que se presentaron ante el foro de primera instancia; (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. *Meléndez González, et al. v. M. Cuebas*, supra. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos. *Id.* en la pág. 115. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. *Vera v. Bravo*, 161 DPR 308, 335 (2004).

b.

El Código Municipal de Puerto Rico, Ley Núm. 107 del 13 de agosto de 2020, según enmendada, expone en su Artículo 1.053 que "[n]o estarán autorizadas las acciones contra el municipio por daños y perjuicios a la persona o la propiedad [...] **cuando ocurran accidentes en las carreteras o aceras estatales**". 21 L.P.R.A. § 7084. (Énfasis provisto). De aquí que nuestro Tribunal Supremo le hubiese reconocido inmunidad a los municipios sobre reclamaciones por accidentes ocurridos en carreteras estatales. *González Meléndez v. Mun. de San Juan*, 212 DPR 601 (2023). La inmunidad constituye una inexistencia de causa de acción. *Rodríguez Figueroa v. Centro de Salud M*, 197 DPR 876 (2017).

Relacionado con ello, el Código Político de Puerto Rico establece que es el Secretario del Departamento de Transportación y Obras Públicas, (DTOP), la agencia gubernamental responsable de mantener las carreteras a su cargo en buen estado de conservación. Art. 403 del Código Político, 3 LPRA sec. 421. De ahí que el Gobierno de Puerto Rico deba responder civilmente e indemnizar a los perjudicados por los daños y perjuicios ocasionados debidos a desperfectos y a la falta de reparación o protección

suficiente en cualquiera de sus vías de comunicación a cargo del DTOP, salvo que pruebe que los desperfectos fueron causados por la violencia de los elementos y que no hubo tiempo suficiente para remediarlos. Art. 404 del Código Político, 3 LPRA sec. 422. A lo que se une que la Ley Núm. 49 de 1917, impone al Secretario del DTOP la obligación ministerial de conservar y mantener "los trozos de carreteras que forman las travesías de los pueblos". Art. 1 de la Ley Núm. 49 de 1917. 9 LPRA sec. 12.

### III. Aplicación del Derecho a los hechos

a.

Visto que estamos ante una Sentencia Parcial en la cual se acogió la moción de sentencia sumaria instada por Mafpre, nuestra labor apelativa exige que examinemos *de novo* dicha moción dispositiva y el escrito en oposición, para determinar si cumplieron con los requisitos formales requeridos por la Regla 36 de Procedimiento Civil, *supra*. Superado ello, entonces correspondería verificar si existen hechos materiales en controversia que impidan adjudicar la controversia de derecho planteada.

Efectuado tal ejercicio, observamos que la moción de sentencia sumaria presentada por Mapfre[5] cumplió sustancialmente con los requisitos de forma exigidos por la regla procesal citada. En particular, enumeró una serie de hechos que juzgó materiales e incontrovertidos, junto a la prueba documental que los establecía. Los hechos propuestos y la discusión de derecho incluida fue dirigida a establecer, en lo esencial, que una vez el DTOP admitió ser la agencia con jurisdicción sobre la Avenida en la que ocurrió la caída alegada, el Municipio no tenía responsabilidad alguna sobre el mantenimiento de dicha carretera, aplicando la inmunidad estatutaria reconocida en la Código Municipal ante tal situación En consecuencia, librado el Municipio asegurado de responsabilidad, se imponía concluir que Mapfre tampoco tenía responsabilidad por una causa de acción inexistente contra su asegurado.

---

[5] Entrada Núm. 18 de SUMAC.

Por su parte, el escrito en oposición a sentencia sumaria instado por la señora Santiago Lucerna[6] también cumplió sustancialmente con los requisitos procesales reglamentarios. En este sentido, hizo referencia a los hechos propuestos como incontrovertidos por Mapfre, admitiendo algunos y cuestionando otros. En específico, llevó a la atención del foro primario las contradicciones entre la certificación inicial suscrita por el Municipio, en cuyo contenido se afirmó que la Avenida era de su jurisdicción, frente a las certificaciones posteriores del propio Municipio y el DTOP en las que se dispuso que dicho tramo de carretera era de la jurisdicción de esta última agencia gubernamental, no del Municipio. Entonces, procedió a plantear una serie de controversias que, a su juicio, se mantenían en controversia, aunque sin alusión a prueba documental que les sirviera de sustento.

Respecto a ello, y tal como lo apreció el foro primario en la Sentencia Parcial apelada, no juzgamos que exista una verdadera controversia sobre el hecho esencialísimo respecto a quién ostenta la jurisdicción sobre la Avenida. El tracto procesal que aquí reprodujimos, proveniente de las incidencias contenidas en SUMAC, revela sin mayor dificultad la admisión indubitada por parte del DTOP de la jurisdicción sobre el tramo de carretera donde se alegó que sufrió la caída la señora Santiago Lucerna. La contradicción inicial observada entre la primera certificación del Municipio que abordó el asunto, *vis a vis* las posteriores certificaciones del propio Municipio y el DTOP sobre quién ostentaba jurisdicción sobre la carretera, fue ampliamente superada a través del proceso seguido ante el TPI, que tuvo como resultado la adjudicación de la jurisdicción de la Avenida al DTOP como hecho incontrovertido, por vías de la expresa admisión de dicha agencia pública, y por la propia parte apelante al allanarse a ello mediante su *Moción en torno a moción de sentencia sumaria.[7]*

---

[6] Entrada Núm. 53 de SUMAC.
[7] Entrada Núm. 73 de SUMAC.

Fue *a posteriori* de lo descrito en el párrafo que precede que la parte apelante levantó una nueva argumentación para intentar mantener al Municipio como responsable de la carretera, y con ello, a su aseguradora, la aquí apelada. Es decir, en su *Moción en solicitud de reconsideración y/o desglose de la moción presentada en la entrada (73) y reiteración de oposición a solicitud de sentencia sumaria parcial*[8], la apelante planteó por primera vez que el Municipio sí tenía responsabilidad sobre el tramo de carretera donde ocurrió el incidente, presuntamente por vías de las obligaciones que asumió en el *Acuerdo colaborativo de transferencia de fondos para el mantenimiento **de áreas verdes** en las carreteras mejoras a las infraestructura vial*[9] que suscribió con el DTOP, (el Acuerdo). (Énfasis provisto).

Sobre ello, y tal como se advierte en el propio título del Acuerdo, las obligaciones contraídas por el Municipio a través de dicho documento se limitaron al mantenimiento de áreas verdes en las carreteras estatales. En específico, bajo la sección *Cláusulas y Condiciones* del Acuerdo, cláusula Quinta en particular, se precisaron las actividades que el Municipio tendría a su cargo por virtud del Acuerdo, un total de catorce incisos, todas referentes al mantenimiento de áreas verdes. A *contrario sensu*, del Acuerdo no surge obligación alguna contraída por el Municipio respecto a la reparación estructural de imperfecciones en el asfalto de las carreteras, menos aún el encargarse de los hoyos en estas. Aunque resulte reiterativo, los fondos públicos asignados al Municipio a través del Acuerdo debían ser destinados al mantenimiento de áreas verdes en dichas carreteras, sin alusión cercana a la reparación de huecos en el asfalto.

Entonces, ateniéndonos al contenido de la Demanda y sus posteriores enmiendas, la alegación esencial sobre la causa de la caída se redujo a que, *mientras transitaba en su bicicleta junto a un nutrido grupo de ciclistas, al cruzar un badén que allí se encontraba, **su goma delantera***

---

[8] Entrada Núm. 78 de SUMAC.
[9] *Id*, primer apéndice.

**cayó en unos huecos**, *provocando que ésta cayera hacia su lado derecho e impactara el borde de la acera con su cabeza, y el pavimento con su hombro derecho.*[10] Como se nota, la negligencia alegada refiere a la falta de mantenimiento de la Avenida, con específica atención a los *huecos* mencionados.

En consecuencia, establecido como hecho incontrovertido que la jurisdicción de dicho tramo de carretera al momento de los hechos la ostentaba el DTOP, es decir, una carretera propiedad del Estado, no cabe atribuirle responsabilidad al Municipio sobre la caída alegada en la Avenida. Como explicamos, tampoco surge que el Municipio se hubiese obligado a asumir funciones de reparaciones sobre posibles hoyos en tal tramo a través del Acuerdo.

Lo hasta aquí discutido fue expresamente abordado por nuestro Tribunal Supremo en *González Meléndez v. Mun. de San Juan*, supra, pág. 620, al alto foro identificar como factor determinante para que los municipios no respondan por daños y perjuicios en una situación fáctica similar, "la existencia del vínculo directo entre un accidente y el hecho de que éste ocurra en una carretera o acera propiedad del Estado". Esto, por cuanto el inciso (g) del Artículo 15.005 de la derogada *Ley de Municipios Autónomos* -equivalente al Artículo 1.053 del *Código Municipal*-, supra, "no deja margen a otra interpretación en tanto y en cuanto específicamente **libera de responsabilidad a los municipios cuando ocurren accidentes en carreteras o aceras estatales"**. *Id.* (Énfasis provisto). De aquí que en la Opinión citada se hubiese reconocido inmunidad a los municipios en tales casos. *Id.* "Si se cumplen cualquiera de las instancias del Artículo 15.005 de la *Ley de Municipios Autónomos*, entonces se está ante una limitación para demandar a los municipios, para la cual no existe una excepción en ley. Se trata, pues, de una lista *numerus clausus* establecida por el legislador, y solo él puede variarla". *Id.*, pág. 620.

---

[10] Alegación quinta de la Demanda, Entrada Núm. 1 de SUMAC.

En definitiva, una vez establecido como un hecho incontrovertido que la carretera en donde se alega que ocurrió la caída de la señora Santiago Lucerna es de jurisdicción estatal, solo cabía reconocerle al Municipio la inmunidad que ante tal tipo de acciones judiciales le concede el Código Municipal. De igual forma, ausente responsabilidad del Municipio-asegurado hacia la apelante, tampoco la hay de la aseguradora-Mapfre a esta. "El asegurador solo será responsable, según una póliza de seguros de responsabilidad civil, **si el asegurado ha sido culposo o negligente**". *SLG Albert-García v. Integrand Asrn.*, 196 DPR 382 (2016). (Énfasis provisto). "La responsabilidad del asegurador no será mayor que la pactada en la póliza de seguro **ni surgirá en caso de que el asegurado no haya incurrido en actos u omisiones culposas o negligentes**". *Id.*, pág. 393. (Énfasis provisto).

**IV. Parte dispositiva**

Por los fundamentos expuestos, resolvemos *confirmar* la *Sentencia Sumaria Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones